STATE OF IOWA, Appellee, v. FRED RICHARDSON, Appellant.

No. 40819.

810

February 9, 1932.

Opinion on Rehearing June 20, 1933.

Rehearing Denied September 21, 1933.

J. C. Walter, Ray G. Walter, and Salinger, Reynolds & Meyers, for appellant.

John Fletcher, Neill Garrett, and Geo. H. Clark, Jr., County Attorney, for appellee.

Stevens, J.—Robert Bevins, a child, was struck and fatally injured by the defendant's car about 4 o'clock on the afternoon of September 24, 1930. At the time the fatal injuries were inflicted, the defendant was driving north on Moorehead avenue in the city of Ida Grove. There is a parking in the center of this street. The deceased, with other children, was playing on the parking and in the vicinity of the place where Robert was struck. The testimony tends to show that the automobile, a model T Ford, was being driven at a speed of thirty-five or forty miles per hour. There was also testimony tending to prove that the defendant was at the time intoxi-

cated. Robert was on the curb along the side of the parking in the center of the street or possibly standing on the parking itself. The automobile was driven by defendant upon the parking before Robert was struck. The car proceeded northward a considerable distance, perhaps a half of a block or further, before it was stopped. Defendant testified that he did not see Robert, and that he deflected the course and went upon the parking in the center of the street to avoid striking another child in the path of his automobile.

An opinion was previously filed in this case and a rehearing granted. State v. Richardson, 240 N. W. 695.

■ All of the propositions urged for reversal relate to the instructions to the jury or the refusal of the court to give certain requested instructions. The court in paragraph 10 of its charge to the jury defined involuntary manslaughter and stated the rules for determining the defendant's guilt or innocence. In the course of the opinion in that case we said:

"The courts in referring to this phase of the crime of involuntary manslaughter have used variable expressions such as 'negligence and reckless indifference to the lives and safety of others.' State v. Moore, 129 Iowa 514, 518, 106 N. W. 16, 17; State v. Biewin, 169 Iowa 256, 260, 151 N. W. 102. 'Reckless disregard of the rights of others.' State v. Salmer, 181 Iowa 280, 283, 164 N. W. 620, 621. 'Culpable indifference to the safety of others.' People v. Campbell, 237 Mich. 424, 212 N. W. 97, 99. In State v. Clark, 196 Iowa 1134, 1139, 196 N. W. 82, 84, the court's instruction complained of by defendant contained the language that defendant 'failed to drive it at a rate of speed not endangering the life of other persons.' This court in discussing that instruction said that it eliminated 'the gross negligence and reckless indifference to life which supplies the intent. * * * ' We did not have before us for consideration any contention that 'reckless indifference to life' was an essential element of manslaughter. The charge here is manslaughter, not murder. If the charge were murder, we would have a different question. State v. Shelledy, 8 Iowa 477, 508; State v. Moore, 25 Iowa 128, 134, 95 Am. Dec. 776; 4 Blackstone Com. *191, 192; 29 C. J. 1096 and authorities post. No case has been called to our attention deciding that to constitute manslaughter the culpable indifference must be indifference to life as distinguished from indifference to the safety of others. The court in his instructions in this respect did not err. State v. Biewin, 169 Iowa 256, 151 N. W. 102; State v. Hardie,

47 Iowa 647, 29 Am. Rep. 496; People v. Wilson, 193 Cal. 512, 226 P. 5; Herndon v. State, 38 Okl. Cr. 338, 261 P. 378; 4 Blackstone Com. *191, 192; State v. Salmer, 181 Iowa 280, 164 N. W. 620; State v. Thomlinson, 209 Iowa 555, 228 N. W. 80; State v. Korth, 204 Iowa 1360, 217 N. W. 236; People v. Ryczek, 224 Mich. 106, 194 N. W. 609; Schultz v. State, 89 Neb. 34, 130 N. W. 972, 33 L. R. A. (N. S.) 403, Ann. Cas. 1912C, 495; Crawford v. State, 116 Neb. 125, 216 N. W. 294; Wright v. State, 90 Tex. Cr. R. 435, 235 S. W. 886; Reynolds v. State, 24 Ala. App. 249, 134 So. 815; Oliver v. State, 24 Ala. App. 292, 134 So. 892; People v. Campbell, 237 Mich. 424, 212 N. W. 97; State v. Goetz, 83 Conn. 437, 76 A. 1000, [30 L. R. A. (N. S.) 458]; Smith v. State, 186 Ind. 252, 115 N. E. 943; Held v. Commonwealth, 183 Ky. 209, 208 S. W. 772; 29 C. J. 1148; People v. Barnes, 182 Mich. 179, 148 N. W. 400, 407.

"Of course, the killing must be the natural and probable consequence of the unlawful act."

 It is insisted by counsel for appellant that instruction 10 is inconsistent with the doctrine announced in Siesseger v. Puth, 213 Iowa 164, 239 N. W. 46. This case involved the interpretation of section 5026-b1 of the Code of 1927. This section relates entirely to civil actions brought to recover damages for injuries to automobile guests, and bears no relationship whatever to the statute involved in this case. The cases cited supra sufficiently make this clear.

It is also contended that the court committed error in the instruction under consideration upon the theory that it was the duty of the court to advise the jury that the culpable indifference must be indifference to life as distinguished from indifference to the safety of others. One contention here made is without merit, and is fully answered by what is said above.

 II. The contention is made by counsel that the case was tried below upon the theory that the death of Robert Bevins was the result of unavoidable accident and not of criminal negligence. This theory of the defendant, as above stated, was not in specific terms submitted to the jury. It was admittedly the duty of the court to submit to the jury all of the special defenses urged by the defendant. It is always incumbent upon the court to clearly, fully, and definitely define the crime charged and to instruct the jury as to the elements essential to be proven. Again, at this point, we quote from our former opinion:

"The court charged that involuntary manslaughter consists in the unintentional killing while in the performance of an 'unlawful act in an unlawful manner,' or while 'in the performance of a lawful act by performing the same in such a manner as to show a wanton and reckless disregard and indifference for the safety of other persons who might reasonably be expected to be injured thereby'; and further that by the term 'criminal negligence', as used in the instructions, was meant not merely such negligence as might be the foundation of a damage suit, but reckless and wanton and of such a character as to show an utter disregard for the safety of others who might reasonably be expected to be injured thereby; that if the jury found that the defendant was driving in a careful and prudent manner with due regard to the safety of others, and with due caution and circumspection and at a rate of speed not liable to injure any person, then they should return a verdict of not guilty; but if they found that defendant drove 'carelessly and heedlessly in willful or wanton disregard of the safety of others, or without due caution and circumspection or at a speed or in a manner so as to endanger or be likely to endanger any person,' such findings would not warrant a finding of criminal negligence, but the state must go further and establish that defendant was guilty of criminal negligence in the manner in which, and the speed at which, he drove his car, and must prove that the manner and speed of driving was in such a wanton and reckless manner as to show utter disregard for the safety of others who might reasonably be expected under the circumstances to be injured thereby; that in determining whether or not defendant was guilty of criminal negligence the jury should consider (among other things) visibility, whether there were any children in the street at or near the place of the accident, whether defendant saw decedent, or whether, in the exercise of ordinary care, he should have seen decedent before the collision in time to have avoided the same in the exercise of ordinary care. The court further told the jury that before they could find the defendant guilty they must find not only that defendant was guilty of criminal negligence as in the instructions set forth, but must go further and prove that such criminal negligence was the proximate cause of the injury and death of decedent (defining proximate cause)."

The instruction in the main was favorable to the defendant. The omission of any specific reference therein to the so-called theory of the defendant that the unfortunate death of the youth was due to

unavoidable accident and not to criminal negligence is fully, in effect, covered by the instruction. The jury was clearly told that to justify a conviction it was incumbent upon the state to prove beyond a reasonable doubt that the defendant at the time was operating his automobile in a careless, heedless, and negligent manner in willful or wanton disregard of the safety of others.

Further, the court told the jury that to justify a conviction it was incumbent upon the state to also prove that defendant was guilty of criminal negligence in the manner in which and the speed at which he drove his car. This language clearly eliminated the possibility of a conviction if the act charged was the result of unavoidable accident. The jury could not, upon any theory of fair reasoning, have believed that the defendant was free from criminal negligence and have returned a verdict of not guilty. The jury must have understood that unavoidable accident possesses none of the elements of criminal negligence or of willfulness, heedlessness, and wantonness. The point here urged by appellant is also without substantial merit.

III. An instruction was requested by the defendant to the effect that intoxication alone of the defendant would not justify a conviction. The instruction might properly have been included in the charge. This subject is referred to in one of the closing paragraphs of instruction 10 as a circumstance to be considered by the jury, with others, in determining the guilt or innocence of the defendant. That it was a circumstance having some weight with the jury in determining the guilt or innocence of the defendant may be conceded. It was a proper circumstance for consideration. An automobile is not inherently a dangerous instrumentality, but, when operated by an intoxicated driver, it becomes such.

We find no reversible error in the record, and the judgment of the court is affirmed.—Affirmed.

KINDIG, C. J., and ALBERT, CLAUSSEN, MITCHELL, KINTZINGER, and DONEGAN, JJ., concur.